UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOHN G. COSTINO,                :        Hon. Joseph H. Rodriguez

         Plaintiff,            :        Civil Action No. 14-6940

         v.                    :             OPINION

POLICE OFFICER TONYA
ANDERSON, et al.,              :

         Defendants.           :

This matter is before the Court on a motion to dismiss the Amended

Complaint filed by Defendants Robert Taylor, Meghan Hoerner, Matthew

Weintraub, Tina Kell, George Hallett, and Lynn Frame[1] pursuant to Fed. R.

Civ. P. 12(b)(1) and 12(b)(6), which was joined by Defendants Little Egg

Harbor Township and Tonya Anderson.  The Court has reviewed the

---

[1] Defendant Robert L. Taylor, at all times relevant hereto, was the Cape
May County Prosecutor. (Am. Compl., ¶9.) Defendant Meghan Hoerner, at
all times relevant hereto, was a Cape May County Assistant Prosecutor.
(Am. Compl., ¶5.) Defendant Matthew D. Weintraub, at all times relevant
hereto, was a Cape May County Assistant Prosecutor. (Am. Compl., ¶6.)
Defendant Tina Kell, at all times relevant hereto, was a Cape May County
Assistant Prosecutor. (Am. Compl., ¶7.) Defendant George Hallett, at all
times relevant hereto, was a Detective in the Cape May County Prosecutor's
Office. (Am. Compl., ¶3.) Defendant Lynn Frame, at all times relevant
hereto, was a Lieutenant Detective in the Cape May County Prosecutor's
Office. (Am. Compl., ¶4.) The Amended Complaint characterizes Anderson,
Hallett, Frame, and Abbattisciani as the Law Enforcement Defendants and
Hoerner, Weintraub, Kell, and Taylor as Prosecutor Defendants. (Am.
Compl., ¶10, 11.)

submissions and decides the matter based on the briefs pursuant to Fed. R. Civ. P. 78(b). For the reasons stated here, the motion will be granted in part and denied in part.

### Background

For more than 30 years, Plaintiff John G. Costino was a practicing physician treating patients in his North Wildwood office. (Am. Compl., ¶1 & 18.) In 2007, when the events giving rise to this lawsuit began, Costino maintained a successful North Wildwood medical practice including general internal medicine, sports medicine, pain management, acute care for injured patients, and workers compensation related injuries. (Am. Compl., ¶19.) At that time, Costino was the only pain management physician in the Wildwoods; one of only two pain management physicians in all of Cape May County. (Am. Compl., ¶20.) Costino's multiple board certifications included being a Fellow of the American Academy of Pain Management. (Am. Compl., ¶21.) Costino was certified through the Drug Enforcement Administration to treat patients with opioid (heroin) addiction, and he was permitted to prescribe Suboxone to treat patients with opioid addiction. (Am. Compl., ¶22.) By virtue of Costino's training, skill and reputation, he often received referrals from other physicians to provide treatment for pain management to patients. (Am. Compl., ¶23.)

Costino's medical practice apparently came under the scrutiny of the Cape May County Prosecutor's office in 2005, as a result of a statistical report identifying Costino as prescribing excessive amounts of addictive pain medications. (Am. Compl., ¶24.) The fact that Costino was prescribing a significant amount of addictive pain medications is explained by Plaintiff as: (a.) A substantial portion of his practice was dedicated to pain management patients and to the treatment of patients addicted to opioids; and (b.) On three occasions in 2004 and 2005, prescription pads were stolen from Costino's office and used illegally to obtain addictive pain medications. On each such occasion, Costino reported these thefts and the perpetrators were prosecuted by the authorities. (Am. Compl., ¶25.) Thus, Plaintiff contends the Cape May County Prosecutor's office had actual knowledge of the reason why an excessive amount of addictive pain medication prescriptions may have appeared to have been prescribed by Costino. (Am. Compl., ¶26.)

Nevertheless, in December 2005, the Cape May County Prosecutor's office sent an undercover detective to Costino's office, posing as a heroin addict. (Am. Compl., ¶27.) The detective, Agent Landis, attempted obtain a prescription for pain medication. (Id.) Costino refused to prescribe the medication because the patient presented as a heroin addict. (Id.) Instead,

Costino urged the patient to enter the Suboxone program for treatment of the heroin addiction. (Id.) After his undercover assignment concluded, Agent Landis wrote a report that was favorable to Costino, there being no evidence to support any allegation that Costino improperly prescribed medication. (Id.)

On April 12, 2007, Defendant Little Egg Harbor Township Police Officer Tonya Anderson, wired with a recording device, sought treatment from Costino. (Am. Compl., ¶2 & 29.) She posed as an exotic dancer who had been taking Percocet for pain without a valid prescription. (Id.) She asked to establish herself as a patient of Costino's practice and to obtain a lawful prescription for Percocet. (Id.) Costino took a history and performed a physical examination on defendant Anderson. (Id.) Costino diagnosed Defendant Anderson with acute and chronic strain and sprain of the thoracolumbar spine, primarily based upon her complaints relative to the physical demands of dancing on a stage for eight hours per night. (Id.) She signed Costino's pain management agreement and left the office with a valid prescription for 30 Percocet pills. (Id.)

On August 3, 2007, non-moving Defendant DEA Special Agent Margarita Abbattiscianni, another undercover officer, also sought treatment from Costino posing as an exotic dancer. (Am. Compl., ¶8 & 30.)

Abbattiscianni complained of pain and difficulty with sleeping as a result of her job keeping her up sometimes until 6:00 am. (Id.) She also left the office with a valid prescription for 30 Percocet pills. (Id.) Defendants Anderson and Abbattiscianni treated with Costino on several occasions in 2007, each time posing undercover as exotic dancers with pain symptoms appearing to justify the use of Percocet as treatment. (Am. Compl., ¶31.)

Defendants sought and obtained an Indictment against Costino, charging him with drug related offenses relating to the unlawful distribution of controlled substances. (Am. Compl., ¶33.) In procuring the indictment, and later a superseding indictment alleging unlawful distribution of drugs and health insurance fraud, Defendants allegedly concealed exculpatory evidence from the Grand Jury and from Costino, knowingly procured and relied upon false certifications and testimony from the Law Enforcement Defendants, and procured the alteration of evidence. (Am. Compl., ¶34.)

Specifically, Plaintiff alleges that Anderson falsely certified that she was pain free at the time of her treatment with Costino, when in fact, she presented to Costino with objective indicia of pain, and was actually treating with a chiropractor for her pain symptoms in her cervical, thoracic and lumbar spine. (Am. Compl. ¶35.) The Prosecutor Defendants allegedly

concealed the fact that Anderson was treating with the chiropractor for her pain symptoms and failed to disclose this fact to the Grand Jury and/or Costino. (Am. Compl. ¶36.) Further, Abbattiscianni allegedly presented to Costino complaining of pain, but falsely testified that she did not mention her pain symptoms to Costino during her office visit. (Am. Compl. ¶37.) Her complaint of pain was secretly recorded and was noted on the original official transcript of the secret recording. (Am. Compl. ¶37.) However, Defendant Hallett, with the knowledge of the Prosecutor Defendants but without the knowledge of Costino, allegedly instructed the official transcriber of the secret recording to change the official transcript to omit the fact that Abbattiscianni had mentioned her pain during her office visit with Costino. (Am. Compl. ¶38.) The altered transcript allegedly was utilized by the Prosecutor Defendants in connection with the subsequent prosecution of Costino. (Am. Compl. ¶39.) The Prosecutor Defendants and Defendant Hallett allegedly falsely informed the Grand Jury that Costino did not maintain a medical record of his treatment with Defendant Abbattiscianni, and therefore, that his treatment of her was completely undocumented. (Am. Compl. ¶40.) The Prosecutor Defendants and Defendant Hallett knew this contention to be false, however, because Costino's attorney had previously notified the Prosecutor Defendants of the

whereabouts of the file, and also of the fact that the Law Enforcement Defendants' clerical mistake in misspelling the patient's name "Artiz" instead of "Ortiz" had led to the initial failure to locate the file. (Am. Compl. ¶41.)

In September 2007, approximately 25 law enforcement officers stormed Costino's office, placed him in handcuffs, and seized records from his medical practice. (Am. Compl., ¶43.) At that time, Costino was arrested and taken into police custody. (Id.) There he remained until he was able to post $100,000 bail. (Id.) Additionally, Defendants allegedly provided false and misleading evidence to the State of New Jersey Board of Medical Examiners resulting in Costino being falsely accused of professional misconduct and in the revocation of his medical license. (Am. Compl., ¶44.)

After more than five years, the criminal charges were tried before the Honorable Raymond A. Batten in the Superior Court of Cape May County. (Am. Compl., ¶46.) Costino testified on his own behalf. (Am. Compl., ¶47.) After deliberating less than two hours, on November 8, 2012, the jury returned a verdict in favor of Costino and he was acquitted of all criminal charges. (Am. Compl., ¶48.)

Costino has filed a civil rights complaint in this Court. Beside the individual Defendants described above, Plaintiff has named Cape May

County and Little Egg Harbor Township as Defendants. In Count I of the Amended Complaint, Costino has asserted claims against the individual Defendants for the violation of his 4th and 14th Amendment rights (1) to be free from malicious prosecution without probable cause and (2) to due process.  He alleges that the Defendants worked in concert to secure false charges against him resulting in his arrest, confinement, and prosecution. Count II alleges deliberately indifferent policies, procedures, customs, and/or practices as well as deliberately indifferent training and supervision by the "Government Defendants," Cape May County and Little Egg Harbor Township, (see Am. Compl. ¶ 12-13), in violation of Plaintiff's 4th and 14th Amendment rights. Count II is not at issue in this motion. In Count III, Costino asserts a claim against all Defendants for malicious prosecution in violation of the New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6-1. Count IV alleges malicious prosecution by all Defendants in violation of N.J. Stat. Ann. § 2A:47A-1 and demands punitive damages.  Defendants have moved for dismissal of Count IV for failure to comply with the notice requirements of New Jersey's Tort Claims Act. Plaintiff has not opposed this aspect of the motion, so Count IV will be dismissed. Accordingly, the remainder of the Opinion addresses the claims presented by Counts I and III of the Amended Complaint.

## <u>Applicable Standards</u>

A motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) must be granted if the court lacks subject matter jurisdiction to hear a claim. <u>In re Schering Plough Corp. Intron/Temodar Consumer Class Action</u>, 678 F.3d 235, 243 (3d Cir. 2012). When a defendant files a motion under Rule 12(b)(1), the plaintiff bears the burden of establishing subject matter jurisdiction for the sake of remaining in federal court. <u>Gould Elec., Inc. v. United States</u>, 220 F.3d 169, 178 (3d Cir. 2000). The Court applies this standard to the issue of immunity. <u>See</u> <u>Young v. United States</u>, 152 F. Supp. 3d 337, 344 (D.N.J. 2015).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) may involve either a facial challenge to subject matter jurisdiction or a factual challenge to the jurisdictional allegations. <u>Gould Elec.</u>, 220 F.3d at 176.  If the defendant's attack is facial—i.e., "asserting that the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction"—a court must accept all allegations in the complaint as true. <u>Taliaferro v. Darby Twp. Zoning Bd.</u>, 458 F.3d 181, 188 (3d Cir. 2006). Alternatively, a defendant may "challenge a federal court's jurisdiction by factually attacking the plaintiff's jurisdictional allegations as set forth in the complaint." <u>Mortensen v. First Fed. Sav. & Loan Ass'n</u>, 549 F.2d 884, 891

(3d Cir. 1977). A factual challenge attacks the existence of a court's subject matter jurisdiction apart from any of the pleadings and, when considering such a challenge, a presumption of truthfulness does not attach to a plaintiff's allegations." Id.; see also Martinez v. U.S. Post Office, 875 F. Supp. 1067, 1070 (D.N.J. 1995).

Alternatively, Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a claim based on "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim.  Fed. R. Civ. P. 12(b)(6).  When deciding a motion to dismiss pursuant to Rule 12(b)(6), ordinarily only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration.[2]  See Chester County Intermediate Unit v. Pa. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990).  It is not necessary for the plaintiff to plead evidence. Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977).  The question before the Court is not whether

---

[2]"Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (internal quotation marks and citations omitted) (emphasis deleted).

the plaintiff will ultimately prevail. Watson v. Abington Twp., 478 F.3d 144, 150 (2007). Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility[3] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). "Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

The Court need not accept "'unsupported conclusions and unwarranted inferences,'" Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), however, and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness." Wyeth v. Ranbaxy Labs., Ltd., 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)); see also Kanter v.

---

[3]This plausibility standard requires more than a mere possibility that unlawful conduct has occurred.  "When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"" Id.

Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.")). Accord Iqbal, 556 U.S. at 678-80 (finding that pleadings that are no more than conclusions are not entitled to the assumption of truth). Further, although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 555 (internal citations omitted). See also Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." Twombly, 550 U.S. at 556. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'-'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679.

## Discussion

### 42 U.S.C. § 1983

Plaintiff's Constitutional claims are governed by Title 42 U.S.C. § 1983, which provides a civil remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution. See Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992). Any analysis of 42 U.S.C. § 1983 should begin with the language of the statute:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

See 42 U.S.C. § 1983.

As the above language makes clear, Section 1983 is a remedial statute designed to redress deprivations of rights secured by the Constitution and its subordinate federal laws. See Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979). By its own words, therefore, Section 1983 "does not . . . create substantive rights." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Baker, 443 U.S. at 145, n.3).

To state a cognizable claim under Section 1983, a plaintiff must allege a "deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (citing Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996)). Thus, a plaintiff must demonstrate two essential elements to maintain a claim under § 1983: (1) that the plaintiff was deprived of a "right or privileges secured by the Constitution or the laws of the United States" and (2) that plaintiff was deprived of his rights by a person acting under the color of state law. Williams v. Borough of West Chester, Pa., 891 F.2d 458, 464 (3d Cir. 1989).

A similar analysis may be made regarding any claim under the New Jersey Civil Rights Act, as the two generally are interpreted in parallel. See Ingram v. Twp. Of Deptford, 911 F. Supp. 2d 289, 298 (D.N.J. 2012); Trafton v. City of Woodbury, 799 F. Supp. 2d 417, 443 (D.N.J. 2011). Therefore, the Court will not undertake a separate analysis of Plaintiff's claim under the New Jersey Civil Rights Act presented by Count III.

## Eleventh Amendment Sovereign Immunity

Defendants initially move for dismissal under Federal Rule of Civil Procedure 12(b)(1), arguing that this Court lacks subject matter jurisdiction because the Defendants enjoy sovereign immunity under the Eleventh

Amendment. The Eleventh Amendment incorporates a general principle of sovereign immunity that bars citizens from bringing suits for damages against any State in federal court. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100-01 (1984). Sovereign immunity extends to State agencies and State officers, "as long as the state is the real party in interest." Fitchik v. N.J. Transit Rail Operations, 873 F.2d 655, 659 (3d Cir. 1989). It does not extend to counties and municipalities. Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977); Bolden v. Southeastern Pa. Transp. Auth., 953 F.2d 807, 813-14 (3d Cir. 1991) ("[A]lthough political subdivisions of a state, such as counties and municipalities, fall within the term 'State' as used in the Fourteenth Amendment, political subdivisions are not 'State[s]' under the Eleventh Amendment.").[4]

### Amenability to Suit as "Persons" under § 1983 and the NJCRA

The United States Supreme Court has held that "neither a State nor its officials acting under their official capacities are 'persons' amenable to suit under § 1983." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71

---

[4] Additionally, application of the Eleventh Amendment involves factual issues that cannot be resolved from the face of the Complaint. Mortensen, 549 F.2d at 891. Such issues include (1) whether payment of any judgment against the defendants would come from the State treasury, (2) the status of the prosecutor's office under State law, and (3) the county prosecutor's degree of autonomy. See Fitchik, 873 F.2d at 659.

(1989). As such, an employee of the State named as a defendant in a civil rights action may be held liable only if that person has personal involvement in the alleged wrongs and is sued in their personal capacity. See Hafer v. Melo, 502 U.S. 21, 31 (1991) ("state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983"). "Local government bodies and their officials, by contrast, are regarded as 'persons' amenable to suit under § 1983." Estate of Lagano v. Bergen Cty. Prosecutor's Office, 769 F.3d 850, 854 (3d Cir. 2014) (citing Monell v. Department of Social Servs., 436 U.S. 658, 690 (1978)).

"When county prosecutors engage in classic law enforcement and investigative functions, they act as officers of the State." Coleman v. Kaye, 87 F.3d 1491, 1505 (3d Cir. 1996). "When county prosecutors perform administrative functions 'unrelated to the duties involved in criminal prosecution,' however, they act as county officials." Lagano, 769 F.3d at 855 (quoting Coleman, 87 F.3d at 1505-06).

Moving Defendants have argued that they are not "persons" amenable to suit under § 1983 because the county prosecutors engaged in classic law enforcement functions are arms of the State. Plaintiff acknowledges this, and states that his claims against the moving Defendants have been brought only in their individual capacities. See Am. Compl. ¶ 53. As such,

16

Counts I and III will be analyzed only insofar as they are asserted against moving Defendants in their individual capacities.

## Immunities

Individuals named as defendants in their personal capacities are amenable to suit under § 1983 as "persons." Lagano, 769 F.3d at 856. "Officials sued in their personal capacities . . . may assert personal immunity defenses." Hafer, 502 U.S. at 25.

Defendants Robert Taylor, Meghan Hoerner, Matthew Weintraub, and Tina Kell in their individual capacities argue that they enjoy absolute prosecutorial immunity.  Where a prosecutor acts within the scope of his or her duties "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." Imbler v. Pachtman, 424 U.S. 409, 430 (1976) (affirming dismissal of plaintiff's § 1983 suit against district attorney grounded in part  upon the district attorney's alleged knowing use of perjured testimony). This immunity is limited to activities that are "intimately associated with the judicial phase of the criminal process." Id. (utilizing a "functional approach" to include the alleged knowing use of false testimony at trial and the alleged deliberate suppression of exculpatory evidence). See also Yarris v. Delaware County, 465 F.3d 129, 137 (3d Cir. 2007) (claims based on failure to turn over

exculpatory evidence are shielded by absolute immunity); <u>Rose v. Bartle</u>, 871 F.2d 331, 344 (3d Cir. 1989) (solicitation of testimony, even where false, for use in grand jury proceedings is immunized as encompassed within the preparation necessary to present a case). "By contrast, a prosecutor acting in an investigative or administrative capacity is protected only by qualified immunity." <u>Kulwicki v. Dawson</u>, 969 F.2d 1454, 1463 (3d Cir. 1992). "In addition, there may be instances where a prosecutor's behavior falls completely outside the prosecutorial role. In that case, no absolute immunity is available." <u>Id.</u> (citing <u>Rose</u>, 871 F.2d at 346). "A prosecutor bears the heavy burden of establishing entitlement to absolute immunity." <u>Odd v. Malone</u>, 538 F.3d 202, 207 (3d Cir. 2008) (citations and quotation omitted).

Plaintiff has alleged that the individual "Defendants concealed exculpatory evidence from the Grand Jury and from Costino, knowingly procured and relied upon false certifications and testimony from the Law Enforcement Defendants, and procured the alteration of evidence." (Am. Compl. ¶ 34.) [5] Notably, Plaintiff's claim is not based upon the moving

---

[5] These Defendants also allegedly "provided false and misleading evidence to the State of New Jersey Board of Medical Examiners, resulting in Costino being falsely accused of professional misconduct and in the revocation of his medical license." (Am. Compl. ¶ 35.) While this conduct is outside the realm of the judicial phase of the criminal proceeding, the result before the

Defendants' decision to initiate prosecution. Even if the prosecutors lacked a good faith belief that any wrongdoing had occurred, that decision would be absolutely immune from suit.  See Kulwicki, 969 F.2d at 1463-64. Similarly, however, all of the acts complained of are shielded by prosecutorial immunity. Further, the Amended Complaint details no facts specific to Taylor, Hoerner, Weintraub, or Kell. The motion to dismiss as to these Defendants is granted.

Next, Defendants George Hallett and Lynn Frame in their individual capacities argue that they enjoy qualified immunity.  The doctrine of qualified immunity provides that "government officials performing discretionary functions . . . are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Thus, government officials are immune from suit in their individual capacities unless, "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right" and "the right was clearly established" at the time of the objectionable conduct. Saucier v.

---

Board was not favorable to Costino, so this allegation does not support a malicious prosecution claim.

Katz, 533 U.S. 194, 201 (2001).  Courts may exercise discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

This doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably" and it "applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. Id. (internal quotation omitted). Properly applied, qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier v. Katz, 533 U.S. 194, 202 (2001) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his

conduct was unlawful in the situation he confronted." <u>Couden v. Duffy</u>, 446 F.3d 483, 492 (2006). "If the officer's mistake as to what the law requires is reasonable," the officer is entitled to qualified immunity.  <u>Couden</u>, 446 F.3d at 492 (internal citations omitted). Further, "[i]f officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986). <u>See also</u> <u>Brosseau v. Haugen</u>, 543 U.S. 194, 198 (2004) (The general touchstone is whether the conduct of the official was reasonable at the time it occurred.); <u>Kulwicki</u>, 969 F.2d at 1463 ("Objective reasonableness is measured by the amount of knowledge available to the officer at the time of the alleged violation."). Finally, because qualified immunity is an affirmative defense, the burden of proving its applicability rests with the defendant. <u>See</u> <u>Beers-Capital v. Whetzel</u>, 256 F.3d 120, 142, n.15 (3d Cir. 2001).

The Amended Complaint alleges Defendants Anderson and Abbattiscianni concealed facts from the Grand Jury and Hallett actually altered evidence presented to the Grand Jury, thereby introducing fabricated evidence to engineer a false arrest and prosecute unfounded charges. If true, such would constitute a violation of clearly established law that would have been apparent to a reasonable officer. <u>See, e.g.</u>, <u>Orsatti v. New Jersey State Police</u>, 71 F.3d 480, 483 (3d Cir. 1995) (as of 1989, "the

right to be free from arrest except on probable cause was clearly established"). The motion to dismiss on grounds of qualified immunity as to these Defendants must therefore be denied at this stage of the litigation.

Plaintiff has made no factual allegations as to Defendant Frame that warrant her remaining in the case.

## Malicious Prosecution Claim Itself

As to the remaining Defendants, the Court finds that the essential elements of malicious prosecution have been sufficiently alleged. To establish malicious prosecution under § 1983, a plaintiff must establish that: (1) the defendant initiated a criminal proceeding; (2) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding; (3) the criminal prosecution resulted in plaintiff's favor; (4) the proceeding was initiated without probable cause; and (5) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice. Halsey v. Pfeiffer, 750 F.3d 273, 296-97 (3d Cir. 2014); DiBella v. Borough of Beachwood, 407 F.3d 599, 601 (3d Cir. 2005); Santiago v. City of Vineland, 107 F. Supp. 2d 512, 566 (D.N.J. 2000).

Probable cause may be subverted where an officer "knowingly and deliberately, or with a reckless disregard for the truth, made false

statements or omissions that create a falsehood" and "[s]uch statements or omissions are material, or necessary, to the finding of probable cause." Wilson v. Russo, 212 F.3d 781, 786-87 (3d Cir. 2000). In seeking a charge or arrest warrant, officers may not rely on facts of which they had a "high degree of awareness of [their] probable falsity"—meaning that, "when viewing all the evidence, [they] must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information ... reported." Id. See also Halsey, 750 F.3d at 289 ("When falsified evidence is used as a basis to initiate the prosecution of a defendant, or is used to convict him, the defendant has been injured regardless of whether the totality of the evidence, excluding the fabricated evidence, would have given the state actor a probable cause defense in a malicious prosecution action that a defendant later brought against him."). In this case, probable cause found by the grand jury "may be rebutted by evidence that the presentment was procured by fraud, perjury or other corrupt means." Rose, 871 F.2d at 353. It is, therefore, "a sufficiently fact-laden issue as to typically be a question for the jury." Stolinski v. Pennypacker, 772 F. Supp. 2d 626, 638 (D.N.J. 2011).

## **<u>Conclusion</u>**

For these reasons, the motion to dismiss is granted as to Defendants Robert Taylor, Meghan Hoerner, Matthew Weintraub, Tina Kell, and Lynn Frame. The motion is denied as to Defendants George Hallett, Little Egg Harbor Township, and Tonya Anderson. Defendants Cape May County and Margarita Abbattiscianni have not moved for dismissal and remain in the case. An Order will accompany this Opinion.


Dated: December 20, 2016                   /s/ Joseph H. Rodriguez
                                                      JOSEPH H. RODRIGUEZ
                                                      U.S.D.J.