UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOHN G. COSTINO, | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 14-6940 |
| v. | : | OPINION |
| POLICE OFFICER TONYA ANDERSON, et al., | : | |
| Defendants. | : | |

This matter is before the Court on a motion to dismiss the Amended Complaint filed by Defendant Cape May County[1] pursuant to Fed. R. Civ. P. 12(b)(6). The Court has reviewed the submissions and decides the matter based on the briefs pursuant to Fed. R. Civ. P. 78(b). For the reasons stated here, the motion will be granted.

---

[1] Also named as Defendants were Robert L. Taylor, the Cape May County Prosecutor (Am. Compl., ¶9); Meghan Hoerner, a Cape May County Assistant Prosecutor (Am. Compl., ¶5); Matthew D. Weintraub, a Cape May County Assistant Prosecutor (Am. Compl., ¶6); Tina Kell, a Cape May County Assistant Prosecutor (Am. Compl., ¶7); George Hallett, a Detective in the Cape May County Prosecutor's Office (Am. Compl., ¶3); Lynn Frame, a Lieutenant Detective in the Cape May County Prosecutor's Office (Am. Compl., ¶4); and Little Egg Harbor Police Officer Tonya Anderson (Am. Comp., ¶2). The Amended Complaint characterizes Anderson, Hallett, Frame, and Abbattisciani as the Law Enforcement Defendants and Hoerner, Weintraub, Kell, and Taylor as Prosecutor Defendants. (Am. Compl., ¶10, 11.) Along with Cape May County, Little Egg Harbor Township was named as a "Government Defendant." (Am. Compl., ¶13, 14.)

## Background

For more than 30 years, Plaintiff John G. Costino was a practicing physician treating patients in his North Wildwood office. (Am. Compl., ¶1 & 18.) In 2007, when the events giving rise to this lawsuit began, Costino maintained a successful North Wildwood medical practice including general internal medicine, sports medicine, pain management, acute care for injured patients, and workers compensation related injuries. (Am. Compl., ¶19.) At that time, Costino was the only pain management physician in the Wildwoods; one of only two pain management physicians in all of Cape May County. (Am. Compl., ¶20.) Costino's multiple board certifications included being a Fellow of the American Academy of Pain Management. (Am. Compl., ¶21.) Costino was certified through the Drug Enforcement Administration to treat patients with opioid (heroin) addiction, and he was permitted to prescribe Suboxone to treat patients with opioid addiction. (Am. Compl., ¶22.) By virtue of Costino's training, skill and reputation, he often received referrals from other physicians to provide treatment for pain management to patients. (Am. Compl., ¶23.)

Costino's medical practice apparently came under the scrutiny of the Cape May County Prosecutor's office in 2005, as a result of a statistical report identifying Costino as prescribing excessive amounts of addictive

pain medications. (Am. Compl., ¶24.) The fact that Costino was prescribing a significant amount of addictive pain medications is explained by Plaintiff as: (a.) A substantial portion of his practice was dedicated to pain management patients and to the treatment of patients addicted to opioids; and (b.) On three occasions in 2004 and 2005, prescription pads were stolen from Costino's office and used illegally to obtain addictive pain medications. On each such occasion, Costino reported these thefts and the perpetrators were prosecuted by the authorities. (Am. Compl., ¶25.) Thus, Plaintiff contends the Cape May County Prosecutor's office had actual knowledge of the reason why an excessive amount of addictive pain medication prescriptions may have appeared to have been prescribed by Costino. (Am. Compl., ¶26.)

Nevertheless, in December 2005, the Cape May County Prosecutor's office sent an undercover detective to Costino's office, posing as a heroin addict. (Am. Compl., ¶27.) The detective, Agent Landis, attempted obtain a prescription for pain medication. (Id.) Costino refused to prescribe the medication because the patient presented as a heroin addict. (Id.) Instead, Costino urged the patient to enter the Suboxone program for treatment of the heroin addiction. (Id.) After his undercover assignment concluded, Agent Landis wrote a report that was favorable to Costino, there being no

evidence to support any allegation that Costino improperly prescribed medication. (Id.)

On April 12, 2007, Defendant Little Egg Harbor Township Police Officer Tonya Anderson, wired with a recording device, sought treatment from Costino. (Am. Compl., ¶2 & 29.) She posed as an exotic dancer who had been taking Percocet for pain without a valid prescription. (Id.) She asked to establish herself as a patient of Costino's practice and to obtain a lawful prescription for Percocet. (Id.) Costino took a history and performed a physical examination on defendant Anderson. (Id.) Costino diagnosed Defendant Anderson with acute and chronic strain and sprain of the thoracolumbar spine, primarily based upon her complaints relative to the physical demands of dancing on a stage for eight hours per night. (Id.) She signed Costino's pain management agreement and left the office with a valid prescription for 30 Percocet pills. (Id.)

On August 3, 2007, non-moving Defendant DEA Special Agent Margarita Abbattiscianni, another undercover officer, also sought treatment from Costino posing as an exotic dancer. (Am. Compl., ¶8 & 30.) Abbattiscianni complained of pain and difficulty with sleeping as a result of her job keeping her up sometimes until 6:00 am. (Id.) She also left the office with a valid prescription for 30 Percocet pills. (Id.) Defendants

Anderson and Abbattiscianni treated with Costino on several occasions in 2007, each time posing undercover as exotic dancers with pain symptoms appearing to justify the use of Percocet as treatment. (Am. Compl., ¶31.)

Defendants sought and obtained an Indictment against Costino, charging him with drug related offenses relating to the unlawful distribution of controlled substances. (Am. Compl., ¶33.) In procuring the indictment, and later a superseding indictment alleging unlawful distribution of drugs and health insurance fraud, Defendants allegedly concealed exculpatory evidence from the Grand Jury and from Costino, knowingly procured and relied upon false certifications and testimony from the Law Enforcement Defendants, and procured the alteration of evidence. (Am. Compl., ¶34.)

Specifically, Plaintiff alleges that Anderson falsely certified that she was pain free at the time of her treatment with Costino, when in fact, she presented to Costino with objective indicia of pain, and was actually treating with a chiropractor for her pain symptoms in her cervical, thoracic and lumbar spine. (Am. Compl. ¶35.) The Prosecutor Defendants allegedly concealed the fact that Anderson was treating with the chiropractor for her pain symptoms and failed to disclose this fact to the Grand Jury and/or Costino. (Am. Compl. ¶36.) Further, Abbattiscianni allegedly presented to

Costino complaining of pain, but falsely testified that she did not mention her pain symptoms to Costino during her office visit. (Am. Compl. ¶37.) Her complaint of pain was secretly recorded and was noted on the original official transcript of the secret recording. (Am. Compl. ¶37.) However, Defendant Hallett, with the knowledge of the Prosecutor Defendants but without the knowledge of Costino, allegedly instructed the official transcriber of the secret recording to change the official transcript to omit the fact that Abbattiscianni had mentioned her pain during her office visit with Costino. (Am. Compl. ¶38.) The altered transcript allegedly was utilized by the Prosecutor Defendants in connection with the subsequent prosecution of Costino. (Am. Compl. ¶39.) The Prosecutor Defendants and Defendant Hallett allegedly falsely informed the Grand Jury that Costino did not maintain a medical record of his treatment with Defendant Abbattiscianni, and therefore, that his treatment of her was completely undocumented. (Am. Compl. ¶40.) The Prosecutor Defendants and Defendant Hallett knew this contention to be false, however, because Costino's attorney had previously notified the Prosecutor Defendants of the whereabouts of the file, and also of the fact that the Law Enforcement Defendants' clerical mistake in misspelling the patient's name "Artiz"

instead of "Ortiz" had led to the initial failure to locate the file. (Am. Compl. ¶41.)

In September 2007, approximately 25 law enforcement officers stormed Costino's office, placed him in handcuffs, and seized records from his medical practice. (Am. Compl., ¶43.) At that time, Costino was arrested and taken into police custody. (Id.) There he remained until he was able to post $100,000 bail. (Id.) Additionally, Defendants allegedly provided false and misleading evidence to the State of New Jersey Board of Medical Examiners resulting in Costino being falsely accused of professional misconduct and in the revocation of his medical license. (Am. Compl., ¶44.)

After more than five years, the criminal charges were tried before the Honorable Raymond A. Batten in the Superior Court of Cape May County. (Am. Compl., ¶46.) Costino testified on his own behalf. (Am. Compl., ¶47.) After deliberating less than two hours, on November 8, 2012, the jury returned a verdict in favor of Costino and he was acquitted of all criminal charges. (Am. Compl., ¶48.)

Costino has filed a civil rights complaint in this Court. In Count I of the Amended Complaint, Costino has asserted claims against the individual Defendants for the violation of his 4th and 14th Amendment rights (1) to be free from malicious prosecution without probable cause and (2) to due

process. He alleges that the Defendants worked in concert to secure false charges against him resulting in his arrest, confinement, and prosecution. Count II alleges deliberately indifferent policies, procedures, customs, and/or practices as well as deliberately indifferent training and supervision by the "Government Defendants," Cape May County and Little Egg Harbor Township, (see Am. Compl. ¶ 12-13), in violation of Plaintiff's 4th and 14th Amendment rights. In Count III, Costino asserts a claim against all Defendants for malicious prosecution in violation of the New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6-1. Count IV alleges malicious prosecution by all Defendants in violation of N.J. Stat. Ann. § 2A:47A-1 and demands punitive damages. Count IV has been dismissed from the case, as have all claims against Defendants Robert Taylor, Meghan Hoerner, Matthew Weintraub, Tina Kell, and Lynn Frame. Previous motions to dismiss have been denied as to Defendants George Hallett, Little Egg Harbor Township, and Tonya Anderson.

## **Applicable Standards**

Plaintiff claims that the Defendant's motion to dismiss is untimely. However, to avoid Rule 12(b)'s timing provision, district courts within the Third Circuit have construed untimely motions to dismiss as motions for judgment on the pleadings under Fed. R. Civ. P. 12(c). See We the People

in Republic Clarissa Aline v. Temple Univ. Hosp., 2004 WL 2004370, at *1 (E.D. Pa. Aug. 8, 2004). The Court does so here.

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). When considering a Federal Rule of Civil Procedure 12(c) motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim, courts analyze the motion under the same legal standards that apply to a motion to dismiss for failure to state a claim under Rule 12(b)(6). Revell v. Port Auth. of N.Y. & N.J., 598 F.3d 128, 134 (3d Cir. 2010) (citing Turbe v. Gov't of the V.I., 938 F.2d 427, 428 (3d Cir. 1991)); see also Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004) ("There is no material difference in the applicable legal standards.").

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a claim based on "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss pursuant to Rule 12(b)(6), ordinarily only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are

taken into consideration.[2] See Chester County Intermediate Unit v. Pa. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990). It is not necessary for the plaintiff to plead evidence. Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977). The question before the Court is not whether the plaintiff will ultimately prevail. Watson v. Abington Twp., 478 F.3d 144, 150 (2007). Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility[3] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). "Where there are well-pleaded factual allegations, a court should assume their veracity and then

---

[2] "Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (internal quotation marks and citations omitted) (emphasis deleted).

[3] This plausibility standard requires more than a mere possibility that unlawful conduct has occurred. "When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" Id.

determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

The Court need not accept "'unsupported conclusions and unwarranted inferences,'" Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), however, and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness." Wyeth v. Ranbaxy Labs., Ltd., 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.")). Accord Iqbal, 556 U.S. at 678-80 (finding that pleadings that are no more than conclusions are not entitled to the assumption of truth). Further, although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 555 (internal citations omitted). See also Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." Twombly, 550 U.S. at 556. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'- 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679.

## Discussion

### 42 U.S.C. § 1983

Plaintiff's Constitutional claims are governed by Title 42 U.S.C. § 1983, which provides a civil remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution. See Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992). Any analysis of 42 U.S.C. § 1983 should begin with the language of the statute:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

See 42 U.S.C. § 1983.

As the above language makes clear, Section 1983 is a remedial statute designed to redress deprivations of rights secured by the Constitution and its subordinate federal laws. See Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979). By its own words, therefore, Section 1983 "does not . . . create substantive rights." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Baker, 443 U.S. at 145, n.3).

To state a cognizable claim under Section 1983, a plaintiff must allege a "deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (citing Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996)). Thus, a plaintiff must demonstrate two essential elements to maintain a claim under § 1983: (1) that the plaintiff was deprived of a "right or privileges secured by the Constitution or the laws of the United States" and (2) that plaintiff was deprived of his rights by a person acting under the color of state law. Williams v. Borough of West Chester, Pa., 891 F.2d 458, 464 (3d Cir. 1989).

A similar analysis may be made regarding any claim under the New Jersey Civil Rights Act, as the two generally are interpreted in parallel. See Ingram v. Twp. Of Deptford, 911 F. Supp. 2d 289, 298 (D.N.J. 2012); Trafton v. City of Woodbury, 799 F. Supp. 2d 417, 443 (D.N.J. 2011).

**Municipal Liability**

A municipality is not liable under 42 U.S.C. § 1983 on a *respondeat superior* theory. Monell v. Dept. Soc. Servs. of New York, 436 U.S. 658, 691 (1978). However, a government entity may be liable for its agent's actions upon a demonstration that a policy or custom of the municipality caused, or was a "moving force" behind, the alleged violation of Plaintiff's rights. Kentucky v. Graham, 473 U.S. 159, 166 (1985) (quoting Polk County v. Dodson, 454 U.S. 312, 326 (1981)); Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996). Thus, in order to prevail against the government entity, "[a] plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered." Losch v. Parkesburg, 736 F.2d 903, 910 (3d Cir. 1984).

A plaintiff cannot seek to hold a municipality liable for damages where the officer has inflicted no constitutional harm. Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 217 n.12 (3d Cir. 2009) (citing City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)). Therefore, before addressing deliberate indifference and causation, a court must first address whether there was a constitutional violation at all. See Grazier, 328 F.3d at 124 ("municipal liability requires constitutional harm"); cf., Thomas, 749

F.3d at 223 ("The parties do not challenge the existence of . . . a constitutional violation on appeal.").

Moreover, the United States Supreme Court has held that "neither a State nor its officials acting under their official capacities are 'persons' under § 1983." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). As such, an employee of the state named as a defendant in a civil rights action may be held liable only if that person has personal involvement in the alleged wrongs and is sued in their personal capacity. See Hafer v. Melo, 502 U.S. 21, 31 (1991) ("state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983").

**Analysis**

A thorough review of the Amended Complaint, as outlined above, fails to reveal any facts sufficient to state a plausible claim against Cape May County. The Amended Complaint does not identify conduct of a municipal decisionmaker or specify a custom or policy of Cape May County that could form the basis for municipal liability. Rather, the Amended Complaint states:

> The Government Defendants developed and maintained policies, procedures, customs and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, which were moving forces behind and proximately caused the violations of Costino's constitutional rights as aforesaid.

> The Government Defendants have created and tolerated an atmosphere of lawlessness, and have developed and maintained long-standing, department-wide customs, law enforcement related policies, procedures, customs, practices, and/or failed to properly train and/or supervise their employees in a manner amounting to deliberate indifference to the constitutional rights of Costino and of the public.
>
> The deliberately indifferent training and supervision provided by the Government Defendants resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available to them and were moving forces in the constitutional injuries suffered by Costino.

(Am. Compl., ¶ 66-68.) These conclusory allegations are unsupported by any facts alleged and therefore are insufficient to state a plausible <u>Monell</u> claim to survive a motion to dismiss. Accordingly, the motion to dismiss the Amended Complaint filed by Defendant Cape May County will be granted.

## **Conclusion**

For these reasons, Defendant Cape May County will be dismissed as a Defendant. An Order will accompany this Opinion.

Dated: October 4, 2017         /s/ Joseph H. Rodriguez
                               JOSEPH H. RODRIGUEZ
                                    U.S.D.J.