UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOHN G. COSTINO, | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 14-6940 |
| v. | : | OPINION |
| POLICE OFFICER TONYA ANDERSON, et al., | : | |
| Defendants. | : | |

This matter is before the Court on motions for summary judgment pursuant to Fed. R. Civ. P. 56 filed by remaining Defendants Little Egg Harbor Township and its Police Officer Tonya Anderson [Doc. 63] and Cape May County Prosecutor's Office Detective George Hallett [Doc. 64]. The Court has reviewed the submissions and decides the matter based on the briefs pursuant to Fed. R. Civ. P. 78(b). For the reasons stated here, the motions will be granted.

## Background

The facts of this case have been outlined in prior opinions of this Court. For more than 30 years, Plaintiff John G. Costino was a practicing physician treating patients in his North Wildwood office. (Am. Compl., ¶1 & 18.) In 2007, when the events giving rise to this lawsuit began, Costino maintained a successful North Wildwood medical practice including

general internal medicine, sports medicine, pain management, acute care for injured patients, and workers compensation related injuries. (Am. Compl., ¶19.) At that time, Costino was the only pain management physician in the Wildwoods; one of only two pain management physicians in all of Cape May County. (Am. Compl., ¶20.) Costino's multiple board certifications included being a Fellow of the American Academy of Pain Management. (Am. Compl., ¶21.) Costino was certified through the Drug Enforcement Administration to treat patients with opioid (heroin) addiction, and he was permitted to prescribe Suboxone to treat patients with opioid addiction. (Am. Compl., ¶22.) By virtue of Costino's training, skill and reputation, he often received referrals from other physicians to provide treatment for pain management to patients. (Am. Compl., ¶23.) Costino's medical practice came under the scrutiny of the Cape May County Prosecutor's office in 2005, as a result of a statistical report identifying Costino as prescribing excessive amounts of addictive pain medications. (Am. Compl., ¶24.) The fact that Costino was prescribing a significant amount of addictive pain medications was explained by Plaintiff as: (a.) A substantial portion of his practice was dedicated to pain management patients and to the treatment of patients addicted to opioids; and (b.) On three occasions in 2004 and 2005, prescription pads were stolen from

Costino's office and used illegally to obtain addictive pain medications. On each such occasion, Costino reported these thefts and the perpetrators were prosecuted by the authorities. (Am. Compl., ¶25.)

In December 2005, the Cape May County Prosecutor's office sent an undercover detective to Costino's office, posing as a heroin addict. (Am. Compl., ¶27.) The detective attempted obtain a prescription for pain medication. (Id.) Costino refused to prescribe the medication because the patient presented as a heroin addict. (Id.) Instead, Costino urged the patient to enter the Suboxone program for treatment of the heroin addiction. (Id.) The detective therefore wrote a report favorable to Costino, indicating that there was no evidence to support an allegation that Costino improperly prescribed medication. (Id.)

On April 12, 2007, Defendant Little Egg Harbor Township Police Officer Tonya Anderson, wired with a recording device, sought treatment from Costino. (Am. Compl., ¶2 & 29.) She posed as an exotic dancer who had been taking Percocet for pain without a valid prescription. (Id.) Anderson told Plaintiff that she was on her feet all day and it was hard for her to "unwind" at the end of the day. (Tr. from Audio of Anderson's 4/12/07 Undercover Visit at ¶¶ 45–48.) She also said that "one of the girls that I work with at a previous place had told me to come here she . . . she I

think she had given me percocets and I, I had taken a few um just to kind of unwind after work[.]" (Id. at ¶¶ 50–52.) Plaintiff told Anderson that Percocet was a pain medication that was "not for relaxation," and that she should not "want something for pain which is addictive unless you've really got a real problem." (Id. at ¶ 55; ¶¶ 59–60.) Anderson said that Percocet worked for her before, and Plaintiff asked her if she was addicted, to which she replied in the negative. (Id. at ¶¶ 92–98.) Plaintiff then asked Anderson if she had any pain. (Id. at ¶ 103.) She responded, "No no I wouldn't say pain. I don't have any . . . ." (Id. at ¶ 104.) He later asked her if she had any spine issues or any "major issues at all?" (Id. at ¶¶ 173–74.) She responded, "No." (Id. at ¶ 175.) Plaintiff diagnosed Anderson with "acute lumbar and thoracic strain and sprain" in Anderson's chart, (see Anderson's chart notes from 4/12/07 visit), and prescribed her thirty 7.5 mg tablets of Percocet—telling her it should last her about 6 weeks. Id. 204–205; (see copy of the prescription dated April 12, 2007).

Less than three weeks later, on May 2, 2007, Anderson returned for more Percocet. (Tr. from Audio of Anderson's 5/2/07 Undercover Visit.) Plaintiff wrote her a six week prescription. (Id.) When asked if she was sore after a night of dancing, Anderson told Plaintiff that "it's more the relaxation" and she has no discomfort. (Id. at 10–16.) During the

encounter, Plaintiff told Anderson, "[y]ou really don't have any other medical issues I mean you're basically a healthy gal." (<u>Id.</u> at 84–85.) He then wrote her another prescription for thirty 7.5 mg tablets of Percocet and warned her not to tell her girlfriends that she has it. (<u>Id.</u> at 121–22; copy of prescription dated May 2, 2007.) Plaintiff again noted in Anderson's chart that she suffered from acute lumbar sprain and strain. (Anderson's chart notes from 5/2/07 visit.)

Anderson returned for more drugs on June 7, 2007—this time asking for a stronger prescription of 10 mg because she wanted something "a little stronger that lasts a little longer[.]" (Tr. from Audio of Anderson's 6/7/07 Undercover Visit, p. 1.) Plaintiff responded, "Well you can go to 10s yeah" (referring to 10 mg). (<u>Id.</u>) Plaintiff again wrote Anderson a prescription—this time for the 10 mg strength. (<u>See</u> copy of prescription dated June 7, 2007.)

The next undercover visit was on June 26—less than a month later. Anderson complained that she did not notice a difference between the 7.5 mg pills and the 10 mg pills. (Tr. from Audio of Anderson's 6/26/07 Undercover Visit, p. 2.) Plaintiff responded "you become a little tolerant." (<u>Id.</u>) Anderson left with another prescription for thirty tablets of 10 mg Percocet. (<u>See</u> copy of prescription dated June 26, 2007.) Two and half

weeks later, Anderson left with another prescription for thirty tablets of 10 mg Percocet. (See copy of prescription dated June 26, 2007.)

During the next visit on August 3, 2007, Anderson was accompanied by another undercover agent, Margarita Abbattiscianni, who was posing as a stripper named Maggie Ortiz. During this visit, Plaintiff asked Abbattiscianni "what's the matter?" She responded, "Well, I mean it's basically the same as Tonya here[,]" (referring to Anderson), "[j]ust I'm up all night and I just need something to just bring me down a little bit during the day." (Tr. of Audio Recording from 8/3/07 at 48:1–7.) Later in the examination the following exchange took place between Plaintiff and Abbattiscianni:

| | |
|---|---|
| Plaintiff: | You're pretty healthy, are you? Well I guess you are, right? |
| Abbattiscianni: | I sure am. I'm one hundred percent healthy. |
| Plaintiff: | No major issues with the dance? |
| Abbattiscianni: | No, none whatsoever. |
| . . . . | |
| Plaintiff: | No surgery ever, huh? |
| Abbattiscianni: | No surgery, no. |
| Plaintiff: | And no medical issues or anything? |
| Abbattiscianni: | No, none. |
| . . . . | |
| Plaintiff: | Any knee issues or— |
| Abbattiscianni: | Oh, no. |
| Plaintiff: | —ankle issues— |
| Abbattiscianni: | No. |
| Plaintiff: | —or anything like that? |
| Abbattiscianni: | Nothing. |
| Plaintiff: | No? |

| | |
|---|---|
| Abbattiscianni: | I feel good. |
| Plaintiff: | That's terrific. And really, no history of anything? |
| Abbattiscianni: | Nothing. |
| Plaintiff: | So, you're basically just as normal as normal can be, right? |
| Abbattiscianni: | Yes, very normal. |

(Id. 60:23–62:18.) Following this interaction, Plaintiff listened to

Abbattiscianni's chest and remarked, "I mean you're clear as a bell, too. Do

you want to do the same thing? Do you want to take one of these

Percocets?" (Id. at 63:1–3.) Abbattiscianni said "Yes, please." (Id.)

Moments later Plaintiff began questioning Abbattiscianni again about pain:

| | |
|---|---|
| Plaintiff: | Do you have any back pain every—every now and then? |
| Abbattiscianni: | No back pain whatsoever, nothing. |
| . . . . | |
| Plaintiff: | Well, let me just caution you to be careful with the medication, okay? |
| Abbattiscianni: | Okay. |
| Plaintiff: | Just take, you know, one a day. |
| Abbattiscianni: | Uh-huh. |
| Plaintiff: | See, taking one a day you'll never have any trouble with the medication. |
| Abbattiscianni: | Right. |
| Plaintiff: | You know, you'll never get addicted or habituated. Do you know what I mean? |
| Abbattiscianni: | Right. |
| Plaintiff: | Just take it when you're done your work. You know, and it'll just relax you— |
| Abbattiscianni: | Just relax, yeah. |
| Plaintiff: | —and takes the pain away. |
| Abbattiscianni: | Uh-huh, uh-huh. |
| Plaintiff: | You know, I'm sure you get these acute strains and sprains and this and that. |

> Abbattiscianni:  You know what, I'm pretty flexible, so there's not much pain. I do a lot of exercise, so I'm good.

(Id. at 63:16–64:20.) Anderson and Abbattiscianni each left with a prescription for 60 10mg tablets of Percocet—twice as much as the previous visits. (See copy of Abbattiscianni's prescription dated August 3, 2007; copy of Anderson's prescription dated August 3, 2007.)

An Indictment was issued against Costino, charging him with drug related offenses relating to the unlawful distribution of controlled substances. (Am. Compl., ¶33.) Costino was arrested in September of 2007 and taken into police custody until he was able to post $100,000 bail. (Am. Compl., ¶43.) After more than five years, the criminal charges were tried before the Honorable Raymond A. Batten in the Superior Court of Cape May County. (Am. Compl., ¶46.) Costino testified on his own behalf. (Am. Compl., ¶47.) After deliberating less than two hours, on November 8, 2012, the jury returned a verdict in favor of Costino and he was acquitted of all criminal charges. (Am. Compl., ¶48.)

Costino has filed a civil rights complaint in this Court. In Count I of the Amended Complaint, Costino asserted claims against the individual Defendants for the violation of his 4th and 14th Amendment rights (1) to be free from malicious prosecution without probable cause and (2) to due process. He alleged that the individual Defendants worked in concert to

secure false charges against him resulting in his arrest, confinement, and prosecution. Count II alleged deliberately indifferent policies, procedures, customs, and/or practices as well as deliberately indifferent training and supervision by Little Egg Harbor Township, (see Am. Compl. ¶ 12-13), in violation of Plaintiff's 4th and 14th Amendment rights. In Count III, Costino asserts a claim for malicious prosecution in violation of the New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6-1. Count IV has been dismissed from the case, as have all claims against previously named Defendants Margarita Abbattiscianni, Robert Taylor, Meghan Hoerner, Matthew Weintraub, Tina Kell, Lynn Frame, and Cape May County.

## **Applicable Standard**

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (a). Thus, the Court will enter summary judgment in favor of a movant who shows that it is entitled to judgment as a matter of law, and supports the showing that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. <u>Id.</u> In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. <u>Id.</u>; <u>Maidenbaum v. Bally's Park Place, Inc.</u>, 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. <u>Anderson</u>, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere

allegations, general denials or . . . vague statements . . . .'" <u>Trap Rock Indus.,</u>

<u>Inc. v. Local 825, Int'l Union of Operating Eng'rs</u>, 982 F.2d 884, 890 (3d

Cir. 1992) (quoting <u>Quiroga v. Hasbro, Inc.</u>, 934 F.2d 497, 500 (3d Cir.

1991)). Indeed,

> the plain language of Rule 56(c) mandates the entry of
> summary judgment, after adequate time for discovery and
> upon motion, against a party who fails to make a showing
> sufficient to establish the existence of an element essential
> to that party's case, and on which that party will bear the
> burden of proof at trial.

<u>Celotex</u>, 477 U.S. at 322. That is, the movant can support the assertion that

a fact cannot be genuinely disputed by showing that "an adverse party

cannot produce admissible evidence to support the [alleged dispute of]

fact." Fed. R. Civ. P. 56(c)(1)(B); <u>accord</u> Fed. R. Civ. P. 56(c)(2).

In deciding the merits of a party's motion for summary judgment, the

court's role is not to evaluate the evidence and decide the truth of the

matter, but to determine whether there is a genuine issue for trial.

<u>Anderson</u>, 477 U.S. at 249. Credibility determinations are the province of

the factfinder. <u>Big Apple BMW, Inc. v. BMW of N. Am., Inc.</u>, 974 F.2d 1358,

1363 (3d Cir. 1992).

## <u>Discussion</u>

**42 U.S.C. § 1983**

Plaintiff's Constitutional claims are governed by Title 42 U.S.C. § 1983, which provides a civil remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution. See Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992). Any analysis of 42 U.S.C. § 1983 should begin with the language of the statute:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

See 42 U.S.C. § 1983.

As the above language makes clear, Section 1983 is a remedial statute designed to redress deprivations of rights secured by the Constitution and its subordinate federal laws. See Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979). By its own words, therefore, Section 1983 "does not . . . create substantive rights." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Baker, 443 U.S. at 145, n.3).

To state a cognizable claim under Section 1983, a plaintiff must allege a "deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law."

Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (citing Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996)). Thus, a plaintiff must demonstrate two essential elements to maintain a claim under § 1983: (1) that the plaintiff was deprived of a "right or privileges secured by the Constitution or the laws of the United States" and (2) that plaintiff was deprived of his rights by a person acting under the color of state law. Williams v. Borough of West Chester, Pa., 891 F.2d 458, 464 (3d Cir. 1989).

A similar analysis may be made regarding any claim under the New Jersey Civil Rights Act, as the two generally are interpreted in parallel. See Ingram v. Twp. Of Deptford, 911 F. Supp. 2d 289, 298 (D.N.J. 2012); Trafton v. City of Woodbury, 799 F. Supp. 2d 417, 443 (D.N.J. 2011).

**Municipal Liability**

A municipality is not liable under 42 U.S.C. § 1983 on a *respondeat superior* theory. Monell v. Dept. Soc. Servs. of New York, 436 U.S. 658, 691 (1978). However, a government entity may be liable for its agent's actions upon a demonstration that a policy or custom of the municipality caused, or was a "moving force" behind, the alleged violation of Plaintiff's rights. Kentucky v. Graham, 473 U.S. 159, 166 (1985) (quoting Polk County v. Dodson, 454 U.S. 312, 326 (1981)); Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996). Thus, in order to prevail against the government entity,

"[a] plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered." <u>Losch v. Parkesburg</u>, 736 F.2d 903, 910 (3d Cir. 1984).

A plaintiff cannot seek to hold a municipality liable for damages where the officer has inflicted no constitutional harm. <u>Acumed LLC v. Advanced Surgical Servs., Inc.</u>, 561 F.3d 199, 217 n.12 (3d Cir. 2009) (citing <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986)). Therefore, before addressing deliberate indifference and causation, a court must first address whether there was a constitutional violation at all. <u>See</u> <u>Grazier</u>, 328 F.3d at 124 ("municipal liability requires constitutional harm"); <u>cf.</u>, <u>Thomas</u>, 749 F.3d at 223 ("The parties do not challenge the existence of . . . a constitutional violation on appeal.").

Moreover, the United States Supreme Court has held that "neither a State nor its officials acting under their official capacities are 'persons' under § 1983." <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989). As such, an employee of the state named as a defendant in a civil rights action may be held liable only if that person has personal involvement in the alleged wrongs and is sued in their personal capacity. <u>See</u> <u>Hafer v. Melo</u>, 502 U.S. 21, 31 (1991) ("state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983").

**Qualified Immunity**

The doctrine of qualified immunity provides that "government officials performing discretionary functions . . . are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Thus, government officials are immune from suit in their individual capacities unless, "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right" and "the right was clearly established" at the time of the objectionable conduct. Saucier v. Katz, 533 U.S. 194, 201 (2001). Courts may exercise discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

This doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably" and it "applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a

mistake based on mixed questions of law and fact. <u>Id.</u> (internal quotation omitted). Properly applied, qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" <u>Ashcroft v. al-Kidd</u>, 131 S. Ct. 2074, 2085 (2011) (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986)).

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Saucier v. Katz</u>, 533 U.S. 194, 202 (2001) (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)). That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Couden v. Duffy</u>, 446 F.3d 483, 492 (2006). "If the officer's mistake as to what the law requires is reasonable," the officer is entitled to qualified immunity.  <u>Couden</u>, 446 F.3d at 492 (internal citations omitted). Further, "[i]f officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986). <u>See also</u> <u>Brosseau v. Haugen</u>, 543 U.S. 194, 198 (2004) (The general touchstone is whether the conduct of the official was reasonable at the time it occurred.); <u>Kulwicki</u>, 969 F.2d at 1463 ("Objective reasonableness is measured by the amount of knowledge

available to the officer at the time of the alleged violation."). Finally, because qualified immunity is an affirmative defense, the burden of proving its applicability rests with the defendant. <u>See</u> <u>Beers-Capital v. Whetzel</u>, 256 F.3d 120, 142, n.15 (3d Cir. 2001).

## Analysis

A thorough review of the Amended Complaint, as outlined above, fails to reveal any facts sufficient to state a plausible claim against Little Egg Harbor Township. The Amended Complaint does not identify conduct of a municipal decisionmaker or specify a custom or policy of Little Egg Harbor Township that could form the basis for municipal liability. Rather, the Amended Complaint states:

> The Government Defendants developed and maintained policies, procedures, customs and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, which were moving forces behind and proximately caused the violations of Costino's constitutional rights as aforesaid.

> The Government Defendants have created and tolerated an atmosphere of lawlessness, and have developed and maintained long-standing, department-wide customs, law enforcement related policies, procedures, customs, practices, and/or failed to properly train and/or supervise their employees in a manner amounting to deliberate indifference to the constitutional rights of Costino and of the public.

> The deliberately indifferent training and supervision provided by the Government Defendants resulted from a conscious or deliberate choice to follow a course of action from among various alternatives

available to them and were moving forces in the constitutional injuries suffered by Costino.

(Am. Compl., ¶ 66-68.) These conclusory allegations are unsupported by any facts alleged and therefore are insufficient to state a plausible <u>Monell</u> claim to survive the instant motion. Moreover, Plaintiff has not supplied the Court with any argument that would tend to allow the claim to survive. Accordingly, summary judgment will be granted in favor of Little Egg Harbor Township.

The Court is left with Counts I and III for malicious prosecution against Defendants Anderson and Hallett. Plaintiff has not opposed Hallett's argument that malicious prosecution claims against a public employee are not subject to the NJCRA but instead are governed by the New Jersey Tort Claims Act ("NJTCA"). <u>See</u> <u>Thigpen v. City of East Orange</u>, 974 A.2d 1126, 1133 (N.J. Super. Ct. App. Div. 2009). This Court previously dismissed the malicious prosecution claims brought under the NJTCA because Plaintiff failed to comply with the Act's notice requirements. Summary judgment will be granted as to Count III.

To establish malicious prosecution under § 1983 a plaintiff must establish that: (1) the defendant initiated a criminal proceeding; (2) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding; (3) the criminal prosecution

resulted in plaintiff's favor; (4) the proceeding was initiated without probable cause; and (5) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice. Halsey v. Pfeiffer, 750 F.3d 273, 296-97 (3d Cir. 2014); DiBella v. Borough of Beachwood, 407 F.3d 599, 601 (3d Cir. 2005); Santiago v. City of Vineland, 107 F. Supp. 2d 512, 566 (D.N.J. 2000).

Probable cause is defined in terms of facts and circumstances sufficient to warrant a prudent to believe that the suspect had committed or was committing an offense. Sharrar v. Felsing, 128 F.3d 810, 817-18 (3d Cir. 1987). A grand jury indictment is prima facie evidence of probable cause. Helmy v. Jersey City, 836 A.2d 802, 807 (N.J. 2003); Rose v. Bartle, 871 F.2d 331, 349 (3d Cir. 1989). However, probable cause may be subverted where an officer "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood" and "[s]uch statements or omissions are material, or necessary, to the finding of probable cause." Wilson v. Russo, 212 F.3d 781, 786-87 (3d Cir. 2000). In seeking a charge or arrest warrant, officers may not rely on facts of which they had a "high degree of awareness of [their] probable falsity"— meaning that, "when viewing all the evidence, [they] must have entertained serious doubts as to the truth of his statements or had obvious reasons to

doubt the accuracy of the information ... reported." Id. See also Halsey, 750 F.3d at 289 ("When falsified evidence is used as a basis to initiate the prosecution of a defendant, or is used to convict him, the defendant has been injured regardless of whether the totality of the evidence, excluding the fabricated evidence, would have given the state actor a probable cause defense in a malicious prosecution action that a defendant later brought against him.").

Plaintiff argues that Anderson lacked probable cause to believe he committed a crime because Anderson presented Plaintiff with "indicia of pain" to justify the Percocet prescription. After an examination, and considering Anderson's description of "the rigors of her occupation as a stripper" (Pl. Br., p. 36), Plaintiff diagnosed Anderson with muscular strain and sprain. Plaintiff also relies on the facts that Anderson signed his pain management agreement and had seen a chiropractor on one occasion near the time of her undercover visit to his office.

These arguments fail to defeat the presumption of probable cause that stem from the grand jury indictment. In addition, Plaintiff has not shown that Anderson or Hallett acted maliciously or for a purpose other than bringing him to justice or that either Defendant was responsible for

initiating the criminal proceeding against him. Summary judgment will be granted.

## Conclusion

For these reasons, the motions for summary judgment pursuant to Fed. R. Civ. P. 56 filed by remaining Defendants Little Egg Harbor Township and its Police Officer Tonya Anderson [Doc. 63] and Cape May County Prosecutor's Office Detective George Hallett [Doc. 64] will be granted. An Order will accompany this Opinion.


Dated: September 26, 2018      /s/ Joseph H. Rodriguez
                               JOSEPH H. RODRIGUEZ
                                    U.S.D.J.